UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TRAVCO INSURANCE COMPANY as
subrogee of ERIC VICTOR,

                            Plaintiff,                     **MEMORANDUM AND ORDER**

       -against-                                  16-CV-1064 (RRM) (RER)

SALLY DINERMAN and IRA DINERMAN,

                            Defendants.
-----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      On March 3, 2016, plaintiff Travco Insurance Company ("Travco") commenced this diversity action in its capacity as subrogee of its insured, Eric Victor, seeking to recover for fire and water damage to Victor's property allegedly caused by the negligence of his next-door neighbors, defendants Sally and Ira Dinerman (collectively, "the Dinermans"). Travco now moves for summary judgment with respect to liability only and the Dinermans, who are now proceeding *pro se*, have opposed that motion by filing a series of notes, four of which are notarized. For the reasons set forth below, Travco's motion is denied.

## BACKGROUND

      Unless otherwise indicated, the following facts are not in dispute. Defendant Sally Dinerman ("Mrs. Dinerman") owned a residence at 1141 East 13th Street in Brooklyn, New York ("1141"), where she lived with her husband, defendant Ira Dinerman ("Mr. Dinerman"). (Complaint (Doc. No. 1) at ¶¶ 7–9; Answer (Doc. No. 5) at 4–5).[1] Mrs. Dinerman also owned a residential property at 1139 East 13th Street ("1139"), which was next door to 1141. (Complaint

---

[1] Unless otherwise indicated, all page numbers relating to documents filed by defendants refer to numbers assigned to those pages by the Court's Electronic Case Filing ("ECF") system.

at ¶ 10; Answer at 5). 1139 was adjacent to and abutting 1137 East 13th Street ("1137"), and these two buildings shared a common wall. (Complaint at ¶¶ 11–12; Answer at 5).

The Dinermans are "active participants" in the Orthodox Jewish faith. (Complaint at ¶ 43; Answer at 11). Sometime on Friday, March 14, 2014 – presumably prior to sundown, the start of the Jewish Sabbath – Mrs. Dinerman placed a tin plate (or "blech") over the lit burners of a kitchen stove located in 1139. (Complaint at ¶ 25; Answer at 7).[2]

Sometime in the evening of March 14, 2014, a fire broke out in the kitchen of 1139, which spread to the adjoining houses on each side: 1141, which was then insured by Tower Insurance Company ("Tower"), and 1137, owned by Eric Victor and insured by plaintiff Travco. *See Otsego Mut. Fire Ins. Co. v. Dinerman*, No. 158600/2016, 2017 WL 1534392, at *1 (N.Y. Sup. Ct. Apr. 20, 2017). Travco paid Victor's insurance claim and, on May 3, 2016, commenced this subrogation action in this Court against the Dinermans, seeking to recoup the $161,057.84 which it had allegedly paid to Victor. Although 1139 was insured by Otsego Mutual Fire Insurance Company ("OMFIC") at the time of the fire, Mrs. Dinerman was subsequently determined violated the "Misrepresentation, Concealment or Fraud" condition of that policy, rendering it void in its entirety and relieving OMFIC of its obligation to defend and indemnify the Dinermans in this action. *See id.* at *8.

Travco's complaint (Doc. No. 1) alleges three causes of action. The first cause of action alleges negligence on the part of Mrs. Dinerman, alleging that the practice of leaving stovetop burners lit throughout the Sabbath was inherently dangerous, and that she failed to exercise due

---

[2] This practice is explained in a July 3, 2020, letter to the Court from an Orthodox Rabbi, Mendel Teitelbaum of Congregation Yeshuos Chaim – one of many submissions the Dinermans made in opposition to Travco's motion. (Motion Papers (Doc. No. 124) at 204.) Orthodox Jews cannot cook during the Sabbath, so all meals are prepared prior to sundown on Friday. To keep the food warm, one can light "a small flame" before the Sabbath and cover it with a "special tin" or "blech" – a metal sheet which covers the stovetop burners. (*Id.*) The pots of prepared food are then placed on the blech, which serves as a hot plate of sorts. Although Rabbi Teitelbaum's letter is not notarized, Travco does not dispute the existence of this practice or Rabbi Teitelbaum's explanation of it.

care in various regards, including placing combustible materials too close to the stove, failing to shield the area around the stove with non-combustible material, failing to adequately observe or check on the stove while the flame remained on, and failing to extinguish the fire in its incipient stages. (Complaint at ¶ 29.) The second cause of action makes the same claims but against Mr. Dinerman. (*Id.* at ¶ 53.) The third cause of action alleges negligence on the part of both defendants under a res ipsa loquitur theory.

The Instant Motion

Travco now moves for summary judgment with respect to liability. In support of that motion, Travco has submitted an affirmation from its attorney, Jesse Prisco (the "Prisco Affirmation"), which attaches as exhibits the affidavits of Eric Victor and Keith C. Fairchild, a fire investigator, as well as an excerpt from a deposition of Mrs. Dinerman.

The affidavit of Eric Victor (the "Victor Affidavit") only serves to establish that Travco has standing to bring this subrogation action. Victor states that he is the owner of 1137 and that the premises were insured by Travco at the time of the fire. (Victor Aff. (Doc. No. 124 at 47–48) at ¶¶ 2, 4–5.) Accordingly, after 1137 sustained damage as a result of the fire, he submitted a claim to Travco. (*Id.* at ¶¶ 6, 8.) Travco then investigated and adjusted the claims, resulting in payments to repair 1137 and to clean, replace, or repair damaged contents. (*Id.* at ¶ 8.)

The affidavit of Keith C. Fairchild (the "Fairchild Affidavit") largely provides an expert opinion as to the origins of the fire, but also contains hearsay: Mrs. Dinerman's statements to Fairchild regarding the events of March 14, 2016. According to Fairchild, he is a former Captain in the New York City Fire Department who, as of 2014, was employed by Mammone & Company ("Mammone") as a fire investigator. (Fairchild Aff. (Doc. No. 124 at 50–52) at ¶¶ 1–2.) Mammone was retained by Travco to conduct a fire cause and origin inspection and analysis

3

relating to the fire at issue in this case. (*Id.* at ¶ 2.) To that end, Fairchild inspected 1139 on April 1, 2016, and interviewed Mrs. Dinerman, who was present during the inspection. (*Id.* at ¶ 4.)

Fairchild's inspection revealed that the fire originated in the first-floor kitchen of 1139. (*Id.* at ¶ 5.) A four-burner natural gas cooktop was located in the area of origin and Fairchild observed "fire and smoke patterns … at the base cabinet that housed the cooktop, to the north wall behind the cooktop stove and to the wall cabinet." (*Id.* at ¶¶ 5–6.)[3] This indicated that the flames had originated from the burners of the cooktop and had first ignited a "painted Masonite wallboard mounted to wooden studs behind the cooktop." (*Id.* at ¶¶ 8, 10.) The fire then "spread to the north wall behind the cooktop and to the wall cabinets above." (*Id.* at ¶ 10.)

According to Fairchild, Mrs. Dinerman stated that she had replaced the cooktop with a newer unit approximately two months prior to the fire. (*Id.* at ¶ 13.) At about 6:40 p.m. on the night of the fire, she placed tin sheets (a blech) across all four burners of the cooktop. (*Id.* at ¶ 14.) She then turned on all four burners, intending to keep them lit until 7:40 the next evening. (*Id.* at ¶¶ 14–15.) Mrs. Dinerman told Fairchild that she "had made a mistake when she turned on all four gas burners," as she "normally … would only turn on two." (*Id.* at ¶ 17.)

After placing pots of water on top of the blech plates, Mrs. Dinerman left the cooktop unattended and went into the living room to talk to a visiting friend. (*Id.* at ¶ 15.) At some point thereafter, a smoke alarm sounded, prompting her to return to the kitchen. (*Id.* at ¶ 16.) There, she "witnessed flames at the wall behind the cooktop and along the upper wall cabinets." (*Id.*) She turned off the burners and attempted to extinguish the fire with a pot of water. (*Id.*) That

---

[3] The term "cooktop" is not synonymous with the terms "stove" or "range." According to the Merriam-Webster Dictionary, a "cooktop" is the flat top of a range or stove or "a built-in cabinet-top cooking apparatus containing usually four heating units."

effort was unsuccessful and the fire eventually spread throughout the kitchen, the building, and the adjoining structures: 1137 and 1141. (*Id.* at ¶ 10.)

Based in part on the information obtained from Mrs. Dinerman, Fairchild opines, "within a reasonable degree of certainty," that the cause of the fire "was an unattended cooktop stove with tin sheets atop igniting a painted Masonite wallboard located in close proximity." (*Id.* at ¶ 19.) Fairchild states, again "within a reasonable degree of certainty," that the fire would not have occurred had Mrs. Dinerman not turned on all four burners under the tin sheets and left the cooktop unattended. (*Id.* at ¶ 20.) In addition, Fairchild opines that the fire "likely would not have occurred" had the cooktop been placed further away from the painted Masonite wallboard. (*Id.*)

The deposition of Mrs. Dinerman, which was taken in an action brought against the Dinermans by OMFIC, partially corroborates Fairchild's account of what Mrs. Dinerman told him on April 1, 2016. Mrs. Dinerman testified that she was in the dining room with her friend, Cynthia Gordon, at the time the smoke alarm went off. (Deposition of Sally Dinerman (Doc. No. 124 at 139–44) at 142, 144.) She promptly went into the kitchen, where she saw "a fire behind the cooktop about 30 inches" and a fire "on the ceiling above the cooktop." (*Id.* at 143.) She turned off the gas, closed the kitchen door, and called 911. (*Id.* at 144.) However, the Dinerman Deposition does not contain an admission about turning on all four burners under the blech.

Travco has not submitted a separate memorandum of law. Although the Prisco Affirmation contains a three-page section entitled "Law and Argument," this section is largely conclusory. With respect to the negligence claims, it cites to *Macy v. Truman*, 70 N.Y.2d 918 (1987), and *Basso v. Miller*, 40 N.Y.2d 233 (1976), for the proposition that "a landowner owes a duty to maintain his or her property in a reasonably safe condition in view of all circumstances,

5

including the likelihood of injury to others." (Prisco Aff. (Doc. No. 124 at 2–10) at ¶ 54.) However, the Prisco Affirmation does not explicitly address the issue of whether, and under what circumstances, the Court is empowered to determine as a matter of law when this duty has been violated. Rather, it asserts that Mrs. Dinerman's "negligence is clearly established" by evidence that she turned on all four burners, left them unattended, and placed the cooktop too close to the Masonite wallboard. (*Id.* at ¶¶ 51–53.) The Prisco Affirmation also asserts, without further elaboration, that "[i]t is clear that the proximate cause of the fire was [Mrs. Dinerman] turning on all four burners, placing a Blech plate atop them all and leaving the area unattended." (*Id.* at ¶ 61.)

Similarly, with respect to the res ipsa loquitur claim, the Prisco Affirmation does little more than assert that "the doctrine of res ipsa loquitur applies here." (*Id.* at ¶ 61.) While it quotes the three criteria for res ipsa loquitur, (*id.* at ¶ 56), the Prisco Affirmation does not analyze them or explain how this case meets those criteria. In addition, although it cites to *Morejon v. RAIS Construction Co.*, 7 N.Y.3d 203 (2006), the Prisco Affirmation does not acknowledge that this case – as discussed in detail below – holds that summary judgment is very rarely granted on a res ipsa loquitur theory.

Neither of the defendants were represented by counsel by late June 2020, when they were served with Travco's motion for summary judgment. Yet, the motion papers that Travco served on defendants included neither the "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" required by Local Civil Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York nor the Statement of Material Facts required by Local Civil Rule 56.1. In an electronic order dated June 23, 2020, the Court direct Travco to rectify these omissions by June 26, 2020, and to include proof of timely service

6

of these documents with the motion when it was ultimately filed. Travco's motion papers contain proof that these two documents were served on June 24, 2020. (*See* Affidavit of Service (Doc. No. 124 at 157.))

Defendants' Responses

In response to Travco's motion, defendants timely filed approximately 200 pages of documents.[4] Most of these are barely legible handwritten notes signed by Mrs. Dinerman. Some are documents relating to this case or one of several other cases in which defendants have been litigants – such as Otsego's state-court action to void the policy covering 1139 (*Otsego Mut. Fire Ins. Co. v. Dinerman*, New York County Index No. 158600/2016), and Mr. Dinerman's short-lived action to reinstate Mrs. Dinerman on his union's "legal plan" (*Dinerman v. New York State United Teachers – NYSUT*, E.D.N.Y. Docket No. 16-CV-1702 (CBA)(PK)) – which Mrs. Dinerman has annotated. Defendants have also submitted a two-page typewritten letter from Mr. Dinerman, which details his fear and concerns relating to this litigation, (Doc. No, 124 at 189–90; 268, 270), and one-page typewritten letters from three other individuals: Rabbi Mendel Teitelbaum, who explains the religious prohibition against cooking on the Sabbath and the use of a blech, (*id.* at 204); Slavie Mitnick, a neighbor of defendants who witnessed fire trucks arriving at the scene around 9:15 to 9:30 p.m., (*id.* at 203); and Rabbi Pinchus Wechter, who was at his house with Mr. Dinerman about 9:00 p.m., when Yaakov Mitnick alerted Mr. Dinerman that his house was on fire, (*Id.* at 234). However, although the "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" informed defendants that "[a]ny witness statements must be in

---

[4] Defendants filed two documents – a letter from Mrs. Dinerman dated August 19, 2020, (Doc. No. 127), and a letter from Matthew P. Karelefsky, notarized November 27, 2020, (Doc. No. 129) – after the July 26, 2020, deadline for filing opposition papers. Since these documents, the first of which is largely incomprehensible and the second of which attests to the fact that Mrs. Dinerman was a good landlady, are untimely, the Court will not consider them.

7

the form of affidavits," and that an affidavit is a "sworn statement of fact," none of these documents – with the exception of four documents signed by Mrs. Dinerman – are notarized.

The first of the notarized documents is an annotated copy of Fairchild's Affidavit, (*id.* at 208–10, 338–42), which contradicts Fairchild's representations as to what Mrs. Dinerman told him. Specifically, Mrs. Dinerman repeatedly denies lighting all four burners, stating that she only lit the back two burners. (*Id.* at 209, 210, 340, 342.) She also denies leaving the fire unattended, saying she was "rite [*sic*] there." (*Id.* at 209, 340.) In other respects, Mrs. Dinerman provides details that corroborate Fairchild's account of what she said. Notably, she clarifies that she replaced the cooktop on February 2, 2014, after being advised by National Grid to do so, and states that she only left one pot of water, and no food, on top of the blech. (*Id.*) In addition, Mrs. Dinerman states that the fire trucks arrived at 8:05 p.m., just after she completed her 911 call. (*Id.* at 210, 342.)

The second notarized document appears to be a Freedom of Information Law ("FOIL") request dated June 25, 2020, and addressed to New York City, which requests confirmation that her 911 call was received at 8:00 p.m. (*Id.* at 211, 302.) It is unclear whether Mrs. Dinerman ever received the confirmation she requested. Although defendants' submissions include a July 2, 2020, letter from the New York Police Department's Legal Bureau, that letter only acknowledges receiving a FOIL request on July 1, 2020, and states that the request would be adjudicated within 90 days. (*Id.* at 160, 251.) The motion papers in this case were filed on August 7, 2020 – within that 90-day period – so it is unclear whether the FOIL request was acted upon before this motion was filed.

The third notarized document is a handwritten note addressed to the Court and dated June 27, 2020. In it, Mrs. Dinerman states: "Please know it was 8 p.m. about when the fire happened.

8

I was there." (*Id.* at 308.) Although this note appears to be signed by both Mrs. Dinerman and her friend, Cynthia Gordon, only Mrs. Dinerman's signature is notarized. (*Id.*)

The fourth notarized document is four-page document which repeats some of the statements contained in the first notarized document: namely, that Mrs. Dinerman only lit the back two burners, (*id.* at 310); that she did not leave the fire unattended, (*id.* at 312); that she replaced the cooktop after being advised by National Grid to do so, (*id.* at 312); and that she only left one pot of water, and no food, on top of the blech, (*id.* at 316). However, this account of the fire casts blame on Verona, the manufacturer of the cooktop, and Mohammed, the contractor who installed it.[5] With respect to Verona, Mrs. Dinerman states that the Verona 20 square inch cooktop had a "power burner" which generated a flame that was "too high" and could not be adjusted. (*Id.* at 310.) She characterizes this as a "manufacturer defect," (*id.* at 314), and notes that Verona is "not making a 20" sq. cooktop anymore," (*id.* at 312). She also states that "Verona didn't make it clear power burner should be rite [*sic*] front." (*Id.* at 314) As a result, Mohammed installed the cooktop "90° wrong," so that the power burner was located in the back near the wall, and not in front. (*Id.* at 310). Mrs. Dinerman also implies that Mohammed installed the cooktop too close to the painted Masonite wallboard, stating: "No one noticed the wall at all or said anything," (*id.* (emphasis in original)), and that "No one said [a] word about the wall," (*id.* at 314 (emphasis in original)).

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is

---

[5] Although the fourth notarized document names the person who installed the cooktop as "Mohammed Remax," other documents submitted by defendants include pictures of a van belonging to "AAA Remax Construction Co." (*Id.* at 174-75.) Accordingly, it seems likely that the person who installed the cooktop was named Mohammed and employed by this company, and not someone named "Mohammed Remax."

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it may impact the "outcome of the suit under the governing law." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the Court must draw all "justifiable" or reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255 (citation omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("[T]he court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions . . . in the light most favorable to the party opposing the motion." (citations omitted)). "In ruling on a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008) (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994)).

Once the moving party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted) (citation omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases and stating that the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation"). In other words, the non-movant must offer "concrete evidence

10

from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major league Baseball Props., Inc.*, 542 F.3d at 310.

The same standards for summary judgment apply where, as here, the non-movant is proceeding *pro se*, although "the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.").

## DISCUSSION

<u>The Negligence Claims</u>

"To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576 (2011). In New York, "'[e]vidence of negligence is not enough by itself to establish liability,' for it also must be proved that the negligence was a proximate, or legal, cause of the event that produced the harm sustained by the plaintiff." *Hain v. Jamison*, 28 N.Y.3d 524, 528 (2016) (quoting *Sheehan v. City of New York*, 40 N.Y.2d 496, 501 (1976)). A defendant's negligence "qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Ferreira v. City of Binghamton*, 975 F.3d 255, 274 (2d Cir. 2020) (quoting *Hain*, 28 N.Y.3d at 529–30).

11

As Travco correctly notes, "[u]nder New York law, a landowner has a duty to 'act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.'" *Zamierowski v. Nat'l R.R. Passenger Corp.*, No. 05-CV-9309 (WCC), 2008 WL 11517440, at *3 (S.D.N.Y. June 9, 2008) (quoting *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976)). But Travco does not acknowledge that the question of "what constitutes reasonable care under the circumstances ordinarily is … for the jury." *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 332 (1981); *see also Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215–16 (2d Cir. 2002) ("Under New York law, … decisions as to a lack of reasonable care … are quintessential jury questions ….") The New York Court of Appeals has made it clear this does not mean "that in every case involving a landowner's liability in negligence the question whether reasonable care was exercised must be determined by the jury," since the court must still "make the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support a favorable jury verdict." *Akins*, 53 N.Y.2d at 332. However, "the plaintiff will generally be entitled to summary judgment only in cases in which there is no conflict at all in the evidence, the defendant's conduct fell far below any permissible standard of due care, and the plaintiff's conduct either was not really involved … or was clearly of exemplary prudence in the circumstances." *Ortiz v. Rosner*, 817 F. Supp. 348, 351 (S.D.N.Y. 1993) (quoting *Andre v. Pomeroy*, 35 N.Y.2d 361, 365 (1974)).

Similarly, with respect to proximate causation, "[t]ypically, the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries is one to be made by the factfinder, as such a determination turns upon questions of foreseeability and what is

foreseeable and what is normal may be the subject of varying inferences." *Hain*, 28 N.Y.3d at 529 (internal quotation marks and citations omitted). "[F]oreseeability and causation ... are issues generally and more suitably entrusted to fact finder adjudication …." *Lombard*, 280 F.3d at 216 (quoting *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994)). Thus, "[c]ourts exercise great caution when making proximate cause determinations as a matter of law." *Hidalgo v. Winding Rd. Leasing Corp.*, No. 12-CV-388 (RER), 2013 WL 1934073, at *3 (E.D.N.Y. May 9, 2013) (citing *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980). "While it is appropriate to decide the question of legal cause as a matter of law where only one conclusion may be drawn from the established facts, where there is any doubt, confusion, or difficulty in deciding whether the issue ought to be decided as a matter of law, the better course is to leave the point for the jury to decide." *White v. Diaz*, 49 A.D.3d 134, 139 (N.Y. App. Div. 2008) (internal quotation marks and citation omitted).

In this case, Travco has presented the Court with sufficient evidence to support a favorable jury verdict on the negligence claim against Mrs. Dinerman.[6] However, the Court cannot find that there is no conflict at all in the evidence or that Mrs. Dinerman's conduct fell so far below any permissible standard of due care as to justify awarding summary judgment with respect to her liability. First, there is a genuine issue of material fact with respect to what Mrs. Dinerman did on the evening of March 14, 2014. According to Fairchild, Mrs. Dinerman admitted that, after placing blech plates across the burners of her cooktop, she lit all four burners and left the cooktop unattended. (Fairchild Aff. at ¶¶ 14–15.) This version of events is only partially corroborated by Mrs. Dinerman's subsequent deposition, at which she testified that she was in the dining room with her friend, Cynthia Gordon, at the time the smoke alarm went off.

---

[6] Since Mr. Dinerman has not cross-moved for summary judgment, the Court does not address the question of whether Travco has made out a case sufficient in law to support a favorable jury verdict against Mr. Dinerman.

13

(Deposition of Sally Dinerman at 142, 144.)  Moreover, this version of events is expressly contradicted by Mrs. Dinerman's notarized opposition papers, in which she repeatedly denies lighting all four burners, stating that she only lit the back two burners, (Motion Papers at 209, 210, 340, 342), and denies leaving the fire unattended, saying she was "rite [*sic*] there."  (*Id.* at 209, 340.)

Second, it is unclear whether the action of lighting the back two burners fell below the permissible standard of due care.  As Travco's attorney implicitly acknowledges in his affirmation in support of Travco's motion, the use of blech plates is a common practice in the Orthodox Jewish community.  See Prisco Aff. at ¶¶ 47–50 (characterizing the use of a blech as "a known and dangerous fire hazard" and citing to three newspaper articles describing deadly fires attributable to the practice in 2005, 2010, and 2015.)  Although the practice may have been linked to occasional house fires, this fact alone does not establish that the practice is negligent *per se* and cannot be done safely.  Indeed, Fairchild opines that the fire would not have occurred had Mrs. Dinerman "not turned on all four burners under the tin sheets and left the cooktop unattended."  (Fairchild Aff. at ¶ 20.)

While the Prisco Affirmation cites to an Appellate Division case, an Appellate Term case, and two state trial-court cases involving unattended fires, none of these hold that the act of leaving a lit burner under a blech unattended is negligent as a matter of law.  To the contrary, one of the trial-court cases expressly acknowledges that the question of "[w]hether the defendant exercised reasonable care in these respects depends upon the circumstances of each particular case."  *Auto. Ins. Co. of Hartford, Conn., v. Skogen*, 171 Misc. 555, 556 (N.Y. Sup. Ct. 1939).  And none of the four cases involved a blech or present circumstances resembling the facts in this case.  The Appellate Division opinion – *Rizzi v. Kensky*, 260 A.D. 930 (N.Y. App. Div. 1940) –

14

merely affirmed a judgment without an opinion, so the facts of that case are unclear. The Appellate Term opinion – *Rosenberg v. Zeitchik*, 52 Misc. 153 (N.Y. Sup. Ct. App. Term 1906) – held that it was negligent for a plumber to leave a portable furnace, which had a hook on which a passerby's clothes could – and did – catch, which contained a charcoal fire, and which had a dipper of molten lead on top, unguarded for several minutes in a barber shop. One of the trial court opinions – *107-109 E. 88th St. LLC v. Nowillo*, 8 Misc. 3d 1015(A) (N.Y. Civ. Ct. 2005) – contains dictum stating that it is grossly negligent to leave a lit stove unattended, but involved the act of lighting and leaving a pilot light unattended when there was a pile of mail atop the stove. And *Skogen* – the other trial- court opinion – held that the defendant was *not* negligent in attempting to carry a burning pot of wax outside.

The Court also cannot find, as a matter of law, that Mrs. Dinerman's actions were a proximate cause of the fire. Fairchild opined that the fire "likely would not have occurred" had the cooktop been placed further away from the painted Masonite wallboard. (Fairchild Aff. at ¶ 20.) In her notarized opposition papers, Mrs. Dinerman implies that the cooktop was installed incorrectly not only because it was too close to the wallboard but also because the power burner was located in the back near the wall, and not in front, and could not be adequately regulated. (Motion Papers at 310, 314). In light of this evidence, a reasonable juror could find that the fire was caused solely by the improper installation. Accordingly, the Court declines to grant summary judgment in favor of Travco on the negligence claims.

The Res Ipsa Loquitur Claim

Travco also relies on the doctrine of res ipsa loquitur to establish liability. "Res ipsa loquitur is an often confused and often misused doctrine that enables a jury presented only with circumstantial evidence to infer negligence simply from the fact that an event happened." *St.*

15

*Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 302–03 (2d Cir. 1990). The New York Court of Appeals has characterized it as "nothing more than a brand of circumstantial evidence," *Morejon v. Rais Const. Co.*, 7 N.Y.3d 203, 211 (2006), which "*allows* but does not *require* the jury to infer that the defendant was negligent." *Id.* at 209 (emphasis added). Accordingly, "res ipsa loquitur evidence does not ordinarily or automatically entitle the plaintiff to summary judgment … , even if the plaintiff's circumstantial evidence is unrefuted." *Id.*

In this case, it is not clear that res ipsa loquitur even applies. It is well established that "in order to justify a res ipsa loquitur theory, a plaintiff must demonstrate that '(1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff.'" *Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 149 (2d Cir. 2005) (quoting *Santa Maria v. Metro–North Commuter R.R.*, 81 F.3d 265, 272 (2d Cir. 1996)). With respect to the first criteria, the Court will take judicial notice of the fact that house fires can be caused by natural phenomena, such as lightning, or can be set intentionally. And even "[a]ccidental fires occur without negligence." *Warren & Arthur Smadbeck, Inc., v. Heling Contracting Corp.*, 50 F.2d 99, 101 (2d Cir. 1931). Accordingly, the mere "occurrence of the fire does not justify the inference of negligence." *Id.*

Even assuming Travco could establish the three criteria, it would not be entitled to summary judgment on this basis alone. Establishing these criteria only creates an inference of negligence, not a presumption of negligence. *Morejon*, 7 N.Y.3d at 209. The issue of whether that inference is so strong as to justify summary judgment is "properly approached by simply evaluating the circumstantial evidence." *Id.* at 212. A "plaintiff should win summary judgment [only] … in the exceptional case in which no facts are left for determination." *Id.* That occurs

16

"only in the rarest of res ipsa loquitur cases," where the "plaintiff's circumstantial proof is so convincing and the defendant's response so weak that the inference of defendant's negligence is inescapable." *Id.* at 209. Indeed, "[o]ver the last century, the Appellate Division has held barely more than a dozen times that a plaintiff is entitled to summary judgment or a directed verdict in res ipsa loquitur cases." *Id.*

This is not only of those cases in which the circumstantial evidence is particularly strong. As noted in above, there are genuine issues of material fact left to decide and Travco itself does not principally rely on circumstantial evidence. Rather, Travco relies on direct evidence: Mrs. Dinerman's admissions to Fairchild that she mistakenly lit all four burners then left the cooktop unattended and Fairchild's expert opinion that her negligent acts caused the fire. Accordingly, the Court declines to grant summary judgment on the res ipsa loquitur theory. The Court reserves for trial the question of whether a charge on the res ipsa loquitur theory is appropriate under the circumstance of this case, in which there is ample direct evidence of liability.

## CONCLUSION

For the reasons set forth below, Travco's motion for summary judgment is denied. This matter is recommitted to Magistrate Judge Reyes for pre-trial supervision, including settlement discussion and, if settlement is not possible, preparation of a joint pre-trial order. The Clerk of Court is respectfully directed to mail a copy of this memorandum and order to Mr. and Mrs. Dinerman and to note the mailing on the docket sheet.

SO ORDERED.

Dated: Brooklyn, New York  
       March 29, 2021

*Roslynn R. Mauskopf*  
_____  
ROSLYNN R. MAUSKOPF  
United States District Judge